## WING *versus* CHASE & *al.*

The affixing of a seal, though it be not mentioned in the instrument, constitutes a deed.

In an action of *covenant broken*, an omission to allege in the declaration, that the instrument declared upon was under seal, is amendable.

It is a principle of law that the sealing of a contract furnishes of itself sufficient evidence of a consideration, although no legal consideration is stated or recognized in the contract itself.

A seal has the effect to overcome and control statements, expressly made in the contract itself, that there was no legal consideration.

A *joint* covenant by two or more persons, that they will not do a specified act, which it was lawful for either of them to do alone, is broken whenever the act is done by either of them.

One, holding a guaranty against the arrest of his person, can, after being arrested, recover upon the guaranty none of the costs or expenses, arising subsequently to the arrest. HOWARD, J. dissenting.

Such an one, after having given the poor debtor's relief bond to procure his release from such an arrest, does not act prematurely in commencing an immediate suit upon the guaranty.

ON FACTS AGREED.

COVENANT.

This plaintiff and one Emerson hired $400, at the bank, upon a note signed by themselves as principals, and by the defendants, Chase and Percival, as sureties. Judgment and execution were recovered by the bank against them all. The sureties paid the execution in unequal sums, Chase paying $232,28, and Percival the residue.

Afterwards Wing, this plaintiff, in 1842, paid to the sureties ten per cent. of what they had paid, and received an instrument, executed by them, of the following description, being the one upon which this action is brought. —

"Whereas, the President, Directors and Company of the

Wing *v.* Chase.

Ticonic Bank, at a Court holden at, on, &c., recovered judgment against Charles Emerson, David Wing, Joseph Percival and Hall Chase, on which said Percival and Chase were sureties, and whereas said Chase and Percival have paid the whole amount of said execution : — now in consideration of ten per cent. of said execution paid to us by said Wing, we hereby covenant and agree with said Wing that we will not levy said execution, nor any execution growing out of said claim, on the property or body of said Wing.

" Hall Chase, [L. s.]
"Attest, I. Redington," " Joseph Percival, [L. s.] "

Afterwards, in 1846, Chase, one of the sureties, brought an action against Wing to recover for the money he had been so compelled to pay, and took judgment and execution for $166, damage, and $26,20, cost. Upon that execution, Wing was arrested, and gave an execution debtor's relief bond. This suit was then brought by Wing. Having failed to fulfill the conditions of that bond, an action was brought upon it, which is now pending.

The cause was submitted to the Court, with power to draw inferences as a jury might, under a stipulation that a nonsuit or default should be entered, as the principles of law may require.

*Bradbury* and *Morrell,* for the plaintiff.

*Stackpole,* for the defendants.

1. Actions of covenant broken can be maintained only upon instruments under seal. The paper offered in evidence in this case is not to be considered a sealed instrument. In its language, it does not purport to be sealed, or that it was recognized or intended to be. The fact that some small slips of blank paper are *now* found to be wafered to the instrument, can have no effect. *When,* by *whom,* and *for what purpose,* this wafering was done, is wholly unknown. As, in the instrument itself, the signers make no recognition of any sealing, so neither does the subscribing witness. The *Court,* as a *matter of law,* cannot decide, neither is there any thing in the case from which a *jury* could *find,* that the instrument was a seal-

ed one. *Warren* v. *Lynch*, 5 Johns. 239 ; *Perrin* v. *Cheese-man*, 6 Halst. 174; *Andrews* v. *Herriot*, 4 Cow. 508 ; *Lee* v. *Adkins*, Miner, 187 ; *Boynton* v. *Reynolds*, 3 Mis. 79; *Jen-kins* v. *Hunt*, 2 Rand. 446 ; *Duning* v. *Bullitt*, 1 Blackf. 241.

2. There was, in point of fact, no consideration for the promise declared upon. A balance of nine tenths of the debt, due from Wing to these defendants, remained unpaid. The agreement signed by them, as Wing now contends, was a promise not to enforce execution for that balance ; that is, in effect, to give the portion of that balance to the debtors. Upon such a promise, a mere *nude fact*, no action is maintainable. *Bailey* v. *Day*, 26 Maine, 88.

As there was no consideration *in fact*, so there was no *proof* of any. The duty of proof is upon the plaintiff. The paper itself furnishes nothing from which even to infer a consideration. On the other hand, it expressly shows that the contract was founded upon no legal consideration.

True, there is a dogma that a seal is evidence *of a consid-eration*. We have, however, shown that the paper, relied on by the plaintiff, had no seal. But suppose it was in due form and under seal, would that alter any liabilities ? A debt due is one thing, the evidence of it is another. The obligations resting upon the debtor are the same, to discharge to the full extent by payment, the sums he may owe, whether the proofs of his indebtedness are by parol or by specialty. Any other conclusion would be giving to mere form the superiority over substance. By following the principle out fully, all inconsistency may be avoided and all real injustice. It is difficult to perceive how the *force of the language* in a contract can be enlarged or restrained by the form, or any other peculiarity of the instrument, by which the proof of it is perpetuated or preserved. Intrinsically there is no difference between a simple promise to pay what is justly due, and a covenant or bond under seal, or a judgment of a competent court for the same. They are all but different modes of proof of the same fact. And it is yet to be ascertained whether courts of law have made any such arbitrary distinctions. They have determined

what shall be the *inferences* from the *facts*, stated in instruments in writing, judgments, &c. ; and in so doing they have declared that a promise to do a thing, though made in writing, is void, unless a consideration be expressed in the writing or can be proved *aliunde;* — while, if the evidence of the same promise is put in the form of a bond under seal, a consideration for it shall be conclusively *presumed* from the mere form of its authentication, whenever its language is such as neither to deny or admit that a consideration existed. This, however, does not place the contract by a specialty on a different footing, as to the *necessity* of a consideration to support it, from the simple contract. So that, a writing under seal, stating distinctly and clearly that it was made without any consideration, cannot by any implication or presumption, which would not do violence to reason and common sense, be construed to contain evidence thereof. The language of the instrument would be an express and direct contradiction of the fact to be *presumed.* The statement of a good consideration for a deed, (unless it be a gift, or release executed,) of land or other thing, is essential to its validity. The rules of law as to the admission and effect of evidence, estop the party from denying the consideration stated in his deed. But the instrument in this case, expressly shows that it was not founded upon any consideration, either of disadvantage to the party who received it, or of advantage to the party who gave it. It is, therefore, respectfully submitted whether the rights pertaining to a simple contract, can be changed by the mere affixing of a seal, (a most unmeaning and useless form,) at a period like this, when almost any man can authenticate his obligations by his own proper signature ?

3. The instrument relied upon is one, made by the defendants jointly, and stipulates only against their joint acts. They did not constitute themselves sureties for each other. But the act complained of was done by Chase alone. Against such an act Percival made no contract. He had no agency in it or control over it. No recovery then can be had against him. And if so, this action, being against him as well as against Chase, must wholly fail.

4. The stipulation of the defendants was, that they would not levy " *said execution,*" nor any execution growing out of " *said claim.*" What execution is meant ? Was it the one which the bank had recovered and which had been satisfied ? What " *claim*" is meant ? Does it mean that satisfied execution, or rather does it not mean the ten per cent. ? If the latter, there was an adequate consideration, and the paper was in effect but a receipt for that part, with a promise, unnecessary and therefore mere surplusage, not to collect that part a second time. Such a construction would be the grammatical one, and it would exactly conform to the justice of the case.

Again, if the paper, relied on by the plaintiff, could support an action like this, it might have been successfully used in defence of the action *Chase* v. *Wing.* The presumption is that it was attempted to be so used. But the case shows that Chase, in that suit, recovered a much smaller sum than he was entitled to. Why that reduction ? It was so made, as a jury might very properly infer, upon a compromise of the parties, and such a compromise annulled the paper now in suit, at least as to Chase. Such a compromise the parties had a right to make, and it was favorable to this plaintiff, both in view of the sum he owed, and by reason of the uncertainties as to the import of the instrument now under consideration.

5. The writing declared upon is not a discharge of the defendants' claim. Notwithstanding that writing the judgment in favor of Chase is valid against the property of Wing. As, for instance, in case of his death, his representatives would have to pay it. It may be satisfied of his property in any way not involving the levy of an execution. With that exception, every legal and moral obligation rests on Wing, as if no such writing had been given. He is, therefore, not injured by the levy of the execution, and is not entitled to damages.

6. The case finds that this suit was commenced before the plaintiff had performed any condition of his bond, given on his arrest, and before any forfeiture of the bond had accrued, and before any thing had been paid by him, and long before Chase brought his action on the bond. The action was pre-

maturely brought, and the plaintiff can in no event recover damages, unless nominal, in this suit.

7. The forfeiture of the bond, being voluntary on the part of plaintiff, and he having allowed and compelled Chase to resort to his suit on the bond, after its forfeiture and after the commencement of his action against Chase, whatever the result to which the Court may come as to other questions and matters in controversy, the plaintiff is not and cannot, under the terms of the agreement, be entitled to any damages on account of the costs and special damages accruing against him in the action upon the bond.

WELLS, J. — The instrument upon which the action is founded is under seal, and although it is not so stated in it, yet the existence of the fact is sufficient to make it the deed of the defendants.  1 Dyer, 19, a.

The declaration should show in an action of covenant that the contract was under seal.  1 Chitty on Plead. 114.  But if there is an omission of such allegation in the plaintiff's declaration, as is suggested, though it is not exhibited, the error would be amendable.

The sealing of the instrument implies and carries with it internal evidence of a consideration.  2 Black. Com. 446. It is not any objection to a bond, if there is no consideration to it.  *Fallowes* v. *Taylor*, 7 T. R. 280 ; *Bunn* v. *Grey*, 4 East, 200.  The recital of a consideration of ten per cent. paid to the defendants cannot affect the obligation, for it would have been valid as their deed if nothing had been paid.  *Lee* v. *Oppenheimer*, 32 Maine, 254.

The covenant, " that we will not levy said execution nor any execution growing out of said claim on the property or body of said Wing," was broken by the arrest of Wing on Chase's execution, for that execution manifestly grew out of the claim of the bank.  It is true they agree not to do what each one might do separately by commencing a suit for what he had paid.  If it clearly appeared, that the acts to be done, were several, and the defendants were not to be holden for

each other, one would not be liable for what the other did. But the covenant is in form joint, and there is nothing to indicate that they did not intend to be holden jointly. The levying the execution, which the bank recovered against them, upon the body or property of Wing, would not necessarily be a separate act. In reference to the part of the covenant not to levy that execution, they must have intended to be holden jointly. And it is not probable they contemplated a joint obligation as to one part of the covenant, and merely a several one as to another part of it.

It appears, that Chase caused Wing to be arrested on the execution, which issued on his judgment; that Wing was discharged by giving a poor debtor's bond; that a suit was subsequently commenced against him for a breach of its conditions, and that the damages and costs were paid by him. Wing might have paid Chase's execution when he was arrested, and prevented the expenses, which accrued by his own act after his arrest. He cannot justly claim as damages a greater sum than he was then required to pay. That sum will be the amount of Chase's execution, and the officer's fees for making the arrest, to which should be added interest on the same to the time of rendering judgment in this action.

*Defendants defaulted.*

SHEPLEY, C. J., and HATHAWAY, J., concurred.

HOWARD, J., considered that the costs and expenses subsequent, as well as those previous, to the arrest should be included in the damage, assessed for the plaintiff.